**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000552**
**24-JUL-2026**
**08:33 AM**
**Dkt. 101 SO**

NO. CAAP-24-0000552

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
WILLIAM LINDSEY, Defendant-Appellant.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FFC-24-0000430)

SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, Guidry and Gluck, JJ.)

Defendant-Appellant William Lindsey (**Lindsey**) appeals from the Family Court of the First Circuit's (**Family Court**)[1] July 19, 2024 "Judgment of Conviction and Sentence; Notice of Entry" (**Judgment**), in which Lindsey was found guilty of abuse of family or household member (**AFHM**) following a bench trial.

Lindsey raises five points of error on appeal, including that the Family Court failed to conduct a voluntariness hearing pursuant to Hawaiʻi Revised Statutes (**HRS**) § 621-26. After the parties submitted their briefs, the Hawaiʻi Supreme Court decided State v. Tolentino, No. SCWC-22-0000255, 2026 WL 1880408, at *1 (Haw. June 30, 2026), which addresses

---

[1] The Honorable Gale L.F. Ching presided.

this precise issue.  Upon careful review of the record on appeal and the briefs submitted, and having giving due consideration to the arguments advanced and the issues raised, we vacate Lindsey's conviction and remand for a new trial.

The relevant background facts are these:  a bench trial was held on July 19, 2024, at which Sophia Mae Sims (**Sims**) testified that on April 24, 2024, she and Lindsey – who were married at the time – got into an argument in a parked vehicle outside of her residence.  While standing outside of the vehicle, Lindsey "threw" a water bottle that was "halfway full" at the left side of her head.  A short while later, Lindsey "hit[]" Sims "on the side of the face in the jaw" before walking off.  Sims testified that her face was "red" with "little hives" and "three little bumps[.]"  Approximately five minutes after being hit, Sims returned to her residence, walked inside, and began crying.  Makerita Baugh (**Baugh**)– whom Sims describes as her "aunty" – asked what happened; Baugh called the police.

Baugh testified that on April 24, 2024, she was living with Sims.  At around 11:00 p.m., Baugh observed Sims coming into the residence "holding her face" and "crying."  Baugh testified that Sims "walked in really fast" and Sims's "face was red and swollen[.]"  Baugh asked Sims what happened, and Sims responded that Lindsey had "hit her twice."  Baugh testified that she then called Lindsey and told him that he was "no longer to call [Sims]" and that Sims was going to "file for a divorce," to which Lindsey responded, "What can I do to get out of this." Defense counsel objected that the statement was inadmissible hearsay.  The Family Court overruled the objection and admitted the statement as that of a party opponent under Hawaiʻi Rules of

Evidence (**HRE**) Rule 803(1)(a).[2]  Baugh also testified that "when I did talk to [Lindsey], he said -- he said he didn't hit her, but that -- I said, Well, her face is swollen."  Again, Defense counsel objected, and the Family Court instructed the prosecutor to rephrase the question.

Lindsey testified that on April 24, 2024, Sims was being "belligerent" and was "coming at [him]."  Lindsey testified that he spoke with Baugh after the incident, during which Baugh stated that she was going to "call[] the cops," that she "hate[d]" him, and would "make sure [she would] put [him] away for a long time."

The Family Court found Sims's testimony credible and adjudged Lindsey guilty of AFHM.  Lindsey was sentenced to a one-year term of probation and two days in jail.

Lindsey timely appealed.  Among his points of error, Lindsey argues that the Family Court "failed to conduct a voluntariness hearing" on Lindsey's statement made to Baugh, "What can I do to get out of this."

This case is controlled by the Hawaiʻi Supreme Court's recent decision in Tolentino.  The Supreme Court held:  "The trial court must conduct an evidentiary voluntariness hearing before it admits a defendant's inculpatory statement.  Due

---

[2]     HRE Rule 803(a) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a) Admissions.

(1) Admission by party-opponent. A statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity, or (B) a statement of which the party has manifested the party's adoption or belief in its truth.

3

process, the right against self-incrimination, and HRS § 621-26 [(2016)] compel a hearing." Tolentino, 2026 WL 1880408, at *2.

Following Tolentino, we first examine whether Lindsey's statement was inculpatory. "The definition of an 'inculpatory statement' is broad and extends beyond full confessions." Id. at *12. "It includes any words spoken by the defendant that allows the factfinder to infer guilt." Id. "An inculpatory statement is any statement made by a defendant that 'admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred.'" Id. (citation omitted). "Ambiguous admissions" are included. Id. The Supreme Court explained:

> Our jurisprudence reflects a commitment to protecting against the use of any involuntary statement – whether a partial admission, an ambiguous remark, or a statement that otherwise supports the prosecution's case - that may contribute to a conviction. Because these statements serve the same prosecutorial purpose as a full-fledged confession, we adopt an inclusive, functional definition.

Id. at *13 (citation omitted).

The statement at issue here – "What can I do to get out of this" – is inculpatory (or, at the very least, ambiguously inculpatory). The statement suggests that Lindsey believes he is in some sort of predicament; this supports the prosecution's case that Lindsey did something wrong – namely, that he broke the law – to find himself in this situation. While not a full confession, Lindsey's statement constituted an "inculpatory statement." At the very least, the statement is an ambiguous remark that "may contribute to a conviction." Id.

Because the statement was inculpatory, a voluntariness hearing was required pursuant to article I, sections 5 and 10 of

4

the Hawaiʻi Constitution and HRS § 621-26.[3]  Under HRS § 621-26, "[b]efore any inculpatory statement goes to the jury, the prosecution must establish voluntariness through evidence" which is to be produced "at a hearing before trial."  Id. at *6. "Even without a motion, the court has a duty to order a hearing on its own."  Id. at *13.  The Supreme Court was clear:  "For inculpatory statements the statute is absolute.  No hearing, no admission."  Id. at *6.  In the instant case, the statement was admitted, but there was no hearing on voluntariness.  Pursuant to Tolentino, the Family Court erred in failing to hold a pretrial voluntariness hearing.

We must therefore determine whether failure to conduct the voluntariness hearing warrants a new trial.  "The use of a defendant's inadmissible inculpatory statement is evaluated under the 'harmless beyond a reasonable doubt' standard."  Id. at *7 (citation omitted).  This is a "stringent" standard in which we determine "whether there is a reasonable possibility that the error might have contributed to the conviction."  Id. at *11 (emphases added) (citing State v. Hirata, 152 Hawaiʻi 27, 33, 520 P.3d 225, 231 (2022)).  Here, the factfinder – the Family Court – heard what even the State concedes was an "'admission' of sorts":

> [Lindsey] made an "admission" of sorts when talking to [Sims's] aunt over the phone.  But that statement did not necessarily mean that [Lindsey] had committed a criminal offense.  He allegedly said, "what can I do to get out of this?["]  But that could be in reference to Baugh's claim

---

[3]     Article I, § 5 provides in relevant part that "No person shall be deprived of life, liberty or property without due process of law . . . ." Article I, § 10 provides in relevant part that " No person shall . . . be compelled in any criminal case to be a witness against oneself."  HRS § 621-26 provides:  "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made."

that she was going to help [Sims] get a "TRO" and a
divorce."

A rational inference from the inculpatory statement in the instant case is that Lindsey was in trouble and needed to get out of said trouble. Lindsey's statement may have contributed to his conviction, and its admission was not harmless beyond a reasonable doubt. See id., at *8 (holding that a "rational inference" from an apology is that the person apologizing "concede[s] responsibility for their conduct," such that "Tolentino's apology might have contributed to his conviction"). Thus, the Family Court's failure to hold a voluntariness hearing was not harmless. See id. "The remedy is a new trial where the constitutional and statutory right is vindicated." Id. at *11.

Finally, Lindsey argues that there was "insufficient evidence [that] had been adduced to establish guilt beyond a reasonable doubt." "[C]hallenges to the sufficiency of the evidence must always be considered on appeal as the double jeopardy clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction." State v. Salavea, 147 Hawai'i 564, 587 n.37, 465 P.3d 1011, 1034 n.37 (2020) (cleaned up).

We review the sufficiency of evidence on appeal as follows:

> Evidence adduced in the trial court must be considered in
> the strongest light for the prosecution when the appellate
> court passes on the legal sufficiency of such evidence to
> support a conviction; the same standard applies whether the
> case was before a judge or jury. The test on appeal is not
> whether guilt is established beyond a reasonable doubt, but
> whether there was substantial evidence to support the
> conclusion of the trier of fact.

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (brackets omitted) (quoting State v. Richie, 88 Hawai'i 19, 33,

960 P.2d 1227, 1241 (1998)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. The relevant penal statute, HRS § 709-906(6) (2014 & 2023 Supp.), provides that "[i]t shall be a petty misdemeanor for a person to intentionally or knowingly strike, shove, kick, or otherwise touch a family or household member in an offensive manner; [or] subject the family member or household member to offensive physical contact[.]"

Lindsey recounts his testimony and version of the facts to argue that if there had been physical contact between him and Sims, "it would have been self defense."[4] Lindsey also challenges the sufficiency of the evidence adduced at trial, though he does not present argument on why the Family Court's ruling was erroneous other than recounting his own version of the facts. Sims, however, testified that on April 24, 2024, Lindsey was her husband when he threw a water bottle at the left side of her head and hit her on the side of the face. The Family Court found Sims's testimony credible and Lindsey guilty of AFHM.

Viewing the evidence in the strongest light for the prosecution, there was substantial evidence to support the Family Court's conclusion that Lindsey was guilty of AFHM. Sims testified that Lindsey, who was then her husband, hit her with a water bottle and later hit the side of her face; this is sufficient to support a conviction under HRS § 709-906(6). See Kalaola, 124 Hawaiʻi at 49, 237 P.3d at 1115; see also State v.

---

[4] In closing argument, Lindsey did not argue self-defense, but argued that the "act itself didn't happen" and denied ever touching Sims.

Jenkins, 93 Hawaiʻi 87, 100-01, 997 P.2d 13, 26-27 (2000) ("Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings" (brackets and citation omitted)); id. at 101, 997 P.2d at 27 ("[A]n appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact" (cleaned up)).

For the foregoing reasons, we vacate the Family Court's July 19, 2024 Judgment of Conviction and Sentence; Notice of Entry and remand for a new trial.

DATED: Honolulu, Hawaiʻi, July 24, 2026.

On the briefs:

Walter J. Rodby,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Daniel M. Gluck
Associate Judge